JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Philip Zito, appeals the ruling of the trial court, which granted summary judgment in favor of the appellee, Underwriters at Lloyd's London ("Lloyd's"), pertaining to various insurance coverage issues. After reviewing the arguments of the parties and the record presented, we reverse the decision of the trial court.
 {¶ 2} Philip Zito ("Zito") worked in the Service Department for the City of Solon. On December 18, 1990, in an effort to provide assistance to a stranded motorist whose vehicle had stalled on the side of the road, Zito directed traffic around the stalled vehicle. While directing traffic, Zito was struck by an automobile driven by Lynn Lampey. As a result of the accident, Zito suffered serious physical injuries and was off work for eight months. He received benefits from the Bureau of Workers' Compensation in the amount of $14,365.71. Zito claimed he was directing traffic within the course and scope of his employment with the city of Solon.
 {¶ 3} On February 19, 1991, Zito sent a letter to the city of Solon requesting copies of insurance policies that may contain uninsured/underinsured motorist ("UM/UIM") coverage. At the time of the accident, the City of Solon was insured under a policy issued by Underwriters at Lloyd's London, effective from October 1, 1990 to October 1, 1991. A letter was issued to Zito from Gallagher Bassett Services, Inc. ("Gallagher Bassett"), the Third Party Claims Administrator, advising that the City of Solon's insurance policy did not provide UM/UIM benefits. Gallagher Bassett never provided Zito a copy of the insurance policy as he had requested.
 {¶ 4} Zito had a personal policy of insurance issued by American Select Insurance Company. In August 1991, American Select paid UM/UIM benefits to Zito in the amount of $85,000. The tortfeasor, Lynn Lampey, was insured by West American Insurance Company. On September 4, 1991, West American rendered the insurance policy liability limits of $15,000 to Zito. Zito released West American and Lampey from liability.
 {¶ 5} On February 23, 2001, following the Ohio Supreme Court's holding in Scott Pontzer v. Liberty Mut. Fire Ins. Co.
(1999), 85 Ohio St.3d 660, Zito made another request for UM/UIM benefits under the Lloyd's policy to the current Third Party Administrator, Wickert Insurance Services, Inc. On December 20, 2001, Lloyd's again declined coverage for Zito's 1990 UM/UIM claim stating the Lloyd's policy contained a 27-month limitation period for initiating a suit to recover insurance benefits.
 {¶ 6} On March 14, 2002, Zito filed suit against Lloyd's claiming he was an insured under the Lloyd's policy. He further claimed that the Lloyd's policy contained express automobile liability coverage, for which UM/UIM coverage was never properly offered and rejected; therefore, UM/UIM coverage arose by operation of law in the same amount as the liability limit. On January 31, 2003, Lloyd's filed a motion for summary judgment claiming the 27-month limitation period for filing suit to recover UM/UIM insurance benefits was controlling and dispositive of the issues presented by Zito. On May 31, 2003, Zito filed his motion in opposition to summary judgment and a cross motion for summary judgment.
 {¶ 7} On July 9, 2003, the trial court held, "* * * the Defendant's motion for summary judgment is granted because: the policy's 27-month suit limitation provision is clear and unambiguous; the policy's 27-month limitation provision is reasonable; Plaintiff failed to file suit within the 27-month suit limitation period; and Plaintiff's lack of knowledge of the suit limitation provision was not reasonable under all the circumstances. * * * the Plaintiff's cross-motion for summary judgment should be denied because Plaintiff failed to comply with the general insurance policy conditions. In Luckenbill v.Midwestern Indemn., Co., the court held that `when UM/UIM coverage is imposed by operation of law, the insured must satisfy the duties imposed on him by the policy in order to obtain the benefits of the concomitant duty to provide coverage that the law imposes on the insurer.' (2001), 143 Ohio App.3d 501, 509. Plaintiff, in the case at bar, did not satisfy the duties imposed on him by the policy — i.e. filing a lawsuit to [sic] UM/UIM coverage which arose by operation of law."
 {¶ 8} The appellant presents one assignment of error for review:
 {¶ 9} "The trial court committed reversible error in granting Lloyd's underwriters' motion for summary judgment denying um/uim coverage under the Lloyd's underwriters' policy and not granting plaintiff's-appellant's motion for summary judgment where plaintiff-appellant is an insured under the policy pursuant to the terms of the policy."
 {¶ 10} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327.
 {¶ 11} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356.
 {¶ 12} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina, Ltd. of Texas
(1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying thoseportions of the record which demonstrate the absence of a genuineissue of fact or material element of the nonmoving party'sclaim." Id. at 296, (emphasis in original). The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 13} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs.
(1993), 87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990),71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735,741.
 {¶ 14} The appellant must first be an insured under the Lloyd's policy in order for our analysis to proceed. At oral argument, the parties stipulated that the appellant was acting in the course and scope of his employment at the time of the accident. This stipulation is supported by the evidence contained in the record; therefore, the appellant is an insured under the express terms contained in the policy issued by Lloyd's.
 {¶ 15} In his sole assignment of error, the appellant argues that the 27-month limitation period to file suit contained in the Lloyd's policy does not apply in situations were UM/UIM coverage arises by operation of law. Because Lloyd's never intended to include UM/UIM coverage in the policy issued to the City of Solon, Lloyd's cannot now claim this condition for liability coverage should also apply to UM/UIM coverage. It is undisputed that UM/UIM coverage was never properly offered and rejected by the City of Solon; therefore, UM/UIM coverage arises by operation of law in the amount equal to the policy's liability limits.
 {¶ 16} In support of his proposition, the appellant citesHaney v. Motorist Mut. Ins. Co. (June 24, 2003), Tuscarawas App. No. 202AP110093. On April 4, 1985, Roberta Haney was seriously injured when an automobile struck her while she was riding her motorcycle. On January 12, 1987, Haney settled her claim with the tortfeasor and released her from liability without notifying Globe Insurance. At the time of the accident, Haney was the named insured on a personal policy of insurance issued by Globe Insurance. In June 2001, Haney made a claim for UM/UIM coverage under the Globe policy, pursuant to the Ohio Supreme Court's holding in Scott-Pontzer. Her claim was rejected, and she filed suit against Globe claiming that the Globe policy did not contain a proper rejection of UM/UIM coverage prior to the inception of the policy, as required by Ohio law; therefore, coverage arose by operation of law.
 {¶ 17} The trial court granted summary judgment in favor of Globe because Haney had breached the notice and subrogation provisions of the policy. The Tuscarawas Appellate Court reversed the trial court and reasoned that any language restricting insurance coverage was intended to apply solely to excess liability coverage and not for the purposes of UM/UIM coverage. In other words, the Haney court held that any restrictions or conditions to coverage under the liability policy do not carry over into UM/UIM coverage arising by operation of law; therefore, the notice and subrogation conditions that Haney breached would not preclude her from UM/UIM coverage. We decline to follow this proposition of law.
 {¶ 18} This court has held general policy conditions that are meant to be applied to any and all coverages provided in the policy would apply to coverage engrafted upon the policy by operation of law. Workman v. Carlisle Engineered Products,Inc., (Jan. 23, 2003), Cuyahoga App. Nos. 81179, and 81211 at 26, reversed on other grounds by Workman v. Carlisle EngineeredProducts, Inc., 100 Ohio St.3d 343. See, also, Luckenbill v.Midwestern Indemnity Co., 143 Ohio App.3d 501. "When coverage arises by operation of law, it may not be diminished in its scope by circumstantial exclusions which are matters the parties never contemplated. However, the right to coverage may beconditioned on compliance with provisions the parties did contemplate." Luckenbill, supra, at 507, (emphasis in original). The Luckenbill court held, "a general, predicativecondition for coverage in a policy of liability insurance, such as a notice provision, applies to UM/UIM coverage imposed by law for the benefit of the insured to the same extent that it applies under the policy's terms for liability coverage, which likewise benefits the insured when he is at fault." Id.
 {¶ 19} The Lloyd's policy, Section IV, paragraph 13 of the "General Conditions" states:
 {¶ 20} "Litigation proceedings:
 {¶ 21} "No suit to recover on account of loss under this Insurance shall be brought until ninety days after the proof of loss shall have been furnished, nor at all unless commenced within twenty-seven months from the date upon which loss occurred, if such loss is within the knowledge of the Assured; if not, the twenty-seven months shall begin upon notice to the Assured of such loss or claim."
 {¶ 22} After reviewing the Lloyd's policy, it is apparent that the Litigation Proceedings Clause, along with the other various clauses included in the "General Conditions" section of the policy, are meant to apply to any and all sections of the Lloyd's policy; therefore, this condition may be applied even though UIM coverage arises in the policy by operation of law.
 {¶ 23} The Ohio Supreme Court, in Miller v. Progressive Cas.Ins. Co., 69 Ohio St.3d 619, held that an insurer's one-year contractual limitation on an insured's right to present a UM/UIM claim violated public policy. However, the Supreme Court of Ohio further stated, "Consistent with our analysis, a two-year period, such as that provided for bodily injury actions in R.C. 2305.10, would be a reasonable and appropriate period of time for an insured who has suffered bodily injuries to commence an action of proceeding for payment of benefits under the uninsured or underinsured motorists provisions of an insurance policy." Id. at 624. See, also, Sarmiento v. Grange Mut. Ins. Co. (Dec. 4, 2003), Cuyahoga App. No. 82807; State Automobile Mut. Ins. Co.v. Lewis (Jan. 23, 2003), Cuyahoga App. No. 81209; Veloski v.State Farm Mut. Auto Ins. Co. (1998), 130 Ohio App.3d 27. "To Permit an unending period of time (or even to limit the period to fifteen years as appellant argued orally) would allow policy holders to sit on their claims indefinitely while waiting for the law to change." Veloski, supra, at 30; therefore, an insurance contract may lawfully limit the time with which a suit may be brought if the period fixed in the policy is not unreasonable.
 {¶ 24} However, even though we find that the Lloyd's Litigation Proceedings Clause could have been reasonable and enforceable, we hold that the enforcement of the clause was waived by the appellee when it failed to provide a copy of the insurance policy to the appellant upon his request or to inform the appellant of this condition for coverage.
 {¶ 25} A suit limitation clause would be enforceable if the insureds were made aware of the provision. Midwest AllergyAssociates, Inc. v. Cincinnati Ins. Co. (June 16, 1983), Franklin App. No. 82AP-970. The usual method for making the insureds aware of the various clauses of an insurance contract is to provide the insureds with a copy of the policy. Id. In that event, ignorance of the contents of the policy may not provide a defense to the enforceabilty of the clause. Oster v. ColumbianNatl. Fire Ins. Co. (1929), 7 Ohio Law Abs. 570. However, if the insured had no means to inform himself of the requirement, the limitation clause would not be enforceable against the insured.Barnes v. Motorists Mut. Ins. Co. (1971), 29 Ohio App.2d 167.
 {¶ 26} In the instant matter, the appellant was injured on December 18, 1990, while acting within the course and scope of his employment with the city of Solon. On February 19, 1991, the appellant sent a letter to the appellee requesting a copy of all insurance policies issued to the city of Solon which may contain UM/UIM coverage. The appellee responded to this request with a letter dated March 7, 1991 stating that the insurance policies issued to the city of Solon did not contain UM/UIM coverage. The appellee then provided only a copy of the declaration page of the Lloyd's policy and made no mention of the 27-month Litigation Proceedings Clause. The appellant never received a copy of the Lloyd's policy.
 {¶ 27} On February 23, 2001, the appellant again sent a letter to Lloyd's requesting UM/UIM coverage. On December 20, 2001, the appellee responded by denying coverage and providing, for the first time, a copy of the 27-month Litigation Proceedings Clause. Thus, the appellant was first placed on notice of the litigation proceedings clause on December 20, 2001. Three months later, on March 14, 2002, the appellant filed suit.
 {¶ 28} The appellee, though its actions, waived the enforcement of the litigation proceedings clause by not providing a copy of the insurance policy to the appellant as he requested on February 19, 1991, and by failing to notify him of the 27-month suit limitation provision within a reasonable time.
 {¶ 29} An insurance policy is a contract. In Ohio, the statute of limitations to file suit on a contract is fifteen years. R.C. 2305.06. Without reasonable notice of the 27-month litigation proceedings condition, the appellant would have assumed a statute of limitations in which to bring suit pursuant to the Lloyd's insurance policy would have been fifteen years.
 {¶ 30} The enforcement of the litigation proceedings condition was waived by the appellee. The grant of summary judgment in favor of the appellee is hereby reversed.
 {¶ 31} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
Sweeney and Calabrese, Jr., JJ., concur.
It is, therefore, considered that said appellants recover of said appellee costs herein.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.